Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff and all others similarly situated*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| CHRISTIAN LEMUS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>RITE AID CORPORATION,<br><br>*Defendant*. | Case No. 8:22-cv-00253<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## __Table of Contents__

I.   Introduction. ........................................................................................................ 1

II.   Parties. ................................................................................................................ 1

III.   Jurisdiction and Venue. ...................................................................................... 2

IV.   Facts. ................................................................................................................... 2

    A.   Defendant makes, markets, and sells Rite Aid products prominently labeled "Non-Drowsy." ............................................................................. 2

    B.   The Non-Drowsy Rite Aid Products cause drowsiness. ............................ 5

    C.   Defendant's Non-Drowsy representations misled reasonable consumers. ................. 6

    D.   Plaintiff was misled by Defendant's misrepresentations. ......................... 9

    E.   Class Action Allegations ........................................................................ 10

V.   Causes of Action. .............................................................................................. 12

VI.   Jury Demand. .................................................................................................... 22

VII.   Prayer for Relief. ............................................................................................... 22

i

## I.      Introduction.

1.      Defendant makes, sells, and markets "Rite Aid" over-the-counter cough, cold and flu medicine (the "Non-Drowsy Rite Aid Products" or "Products"), including generic Rite Aid versions of brands like DayQuil and Robitussin.[1]  Like the branded versions, these medicines contain the active ingredient Dextromethorphan Hydrobromide ("DXM"), an ingredient that causes drowsiness.

2.      Defendant's Non-Drowsy Rite Aid Products state prominently on the front of their label that they are "Non-Drowsy" products.  By prominently labeling these products as "Non-Drowsy," Defendant led Plaintiff and other consumers to believe that the Non-Drowsy Rite Aid Products do not cause drowsiness, and that drowsiness is not a side effect of those products.  Defendant also led Plaintiff and other consumers to believe that those products are for use during the day, and can be safely and satisfactorily consumed during waking hours, at work, and while driving and operating machinery.

3.      But the truth is that products containing DXM—and thus the Non-Drowsy Rite Aid Products—do cause drowsiness, and that drowsiness is a known side effect of DXM (a fact not known by the average consumer).

4.      In this way, Defendant misled Plaintiff and other consumers about the effects of the Non-Drowsy Rite Aid Products.  This was a material misrepresentation that Plaintiff—and other reasonable consumers—relied on when deciding to buy the products.  Had Defendant been truthful, Plaintiff and other consumers would not have purchased the products or would have paid less for them.

5.      Plaintiff brings this case for himself and for millions of other consumers who purchased Non-Drowsy Rite Aid Products.

## II.     Parties.

---

[1] The Non-Drowsy Rite Aid Products include all Rite Aid products sold by Defendant that are labeled "Non-Drowsy" and that contain Dextromethorphan Hydrobromide.

6.     Plaintiff Christian Lemus is a citizen of California (domiciled in Santa Ana).  The proposed class (identified below) includes citizens of every state within the United States.

7.     Defendant Rite Aid Corporation is a Delaware corporation with its principal place of business in Camp Hill, Pennsylvania and has been doing business in the State of California during all relevant times.  Directly and through its agents, Rite Aid Corporation has substantial contacts with, and receives substantial benefits and income from, the State of California.

**III.    Jurisdiction and Venue.**

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

9.     The Court has personal jurisdiction over Defendant because it sold the Non-Drowsy Rite Aid Products to consumers in California, including Mr. Lemus.

10.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including selling the Non-Drowsy Rite Aid Products to Mr. Lemus.

**IV.    Facts.**

**A.    Defendant makes, markets, and sells Rite Aid products prominently labeled "Non-Drowsy."**

11.     Rite Aid manufactures, distributes, markets, and sells the Non-Drowsy Rite Aid Products.

12.     The front label of each Product prominently states that the product is "Non-Drowsy."  For example:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

**Rite Aid Cough & Chest Congestion DM Max** [2]



16
17
18
19
20
21
22
23
24
25
26

**Rite Aid Daytime Cold & Flu Relief Softgels** [3]



27
28

---

[2] https://www.riteaid.com/shop/ra-tussin-dm-max-8z-0393525

[3] https://www.riteaid.com/shop/rite-aid-day-time-cold-flu-relief-non-drowsy-48-liquid-caps-8015816

**Rite Aid Severe Multi-Symptom Cough, Cold & Flu [4]**



13.     These representations are materially the same across all Non-Drowsy Rite Aid Products.

14.     In reality, however, the Non-Drowsy Rite Aid Products cause drowsiness, and drowsiness is a known side effect of the products.

15.     The Non-Drowsy Rite Aid Products do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect of the Non-Drowsy Rite Aid Products.

16.     Based on the prominent "Non-Drowsy" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness.  That is, a reasonable consumer would believe that drowsiness is *not* a side effect of the product.

_____

[4] https://www.riteaid.com/shop/rite-aid-adult-tussin-severe-multi-symptom-cough-cold-and-flu-cf-max-8-fl-oz

4

17.     Indeed, Defendant labeled the products this way because it intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B.     The Non-Drowsy Rite Aid Products cause drowsiness.**

18.     In truth, products containing DXM—like each of the Non-Drowsy Rite Aid Products—do cause drowsiness.  Drowsiness is a documented side effect of DXM at the recommended dosages. [5]

19.     Indeed, drowsiness is a common side effect at the recommended dosages.  For example, a study of DXM found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine.[6]  The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And the patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in Non-Drowsy Rite Aid products.[7]

---

[5] Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed November 22, 2021).

[6] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997). The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy." Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence (last accessed November 22, 2021).

[7] For example, Rite Aid Cough & Chest Congestion DM Max liquid contains 20 mg of DXM per 20 ml of syrup and the recommended dosage is 20 ml orally every 4 hours.  https://www.riteaid.com/shop/ra-tussin-dm-max-8z-0393525.  Likewise, the Rite Aid Cold & Flu Relief Softgels contain 10 mg of DXM per capsule and the recommended dosage is two capsules every 4 hours. https://www.riteaid.com/shop/rite-aid-day-time-cold-flu-relief-non-drowsy-48-liquid-caps-8015816.

5

20.     Furthermore, the FDA's adverse event report database confirms that sedation (i.e., drowsiness) is one of the most frequently-cited side effects of dextromethorphan-containing products. [8]

21.     For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting DXM. [9]



**C.     Defendant's Non-Drowsy representations misled reasonable consumers.**

22.     The Food and Drug Administration prohibits drug labeling that is "false or misleading." 21 C.F.R. § 201.6.   It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

23.     Based on the fact that Defendant labels the Non-Drowsy Rite Aid Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness.   Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products.   Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't

---

[8] Sedation is associated with drowsiness. *See* IV/Monitored Sedation, American Society of Anesthesiologists, https://www.asahq.org/madeforthismoment/anesthesia-101/types-of-anesthesia/ivmonitored-sedation/ (even "minimal" sedation means that "you'll feel drowsy")

[9] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

make you sleepy."[10]  This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness."[11]

24.     Rite Aid's advertisements and labeling do not contain any language that a reasonable consumer would understand to qualify these representations, or that would otherwise put a reasonable consumer on notice of the fact that the Non-Drowsy Rite Aid Products actually cause drowsiness.

25.     Unlike Defendant, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth:



26.     Defendant could have simply omitted the false and misleading "Non-Drowsy" statements from its products.

27.     Or, if Defendant wanted to say something to indicate that a Non-Drowsy Rite Aid Product might cause *less* drowsiness than another Rite Aid product, it could have made a truthful statement to this effect, as other drug makers do.

---

[10] "How to read over the counter (OTC) drug labels," Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm

[11] https://www.merriam-webster.com/medical/nondrowsy

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

28.     For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy."



29.     Because Defendant makes and sells the Non-Drowsy Rite Aid Products, Defendant researched the known and common side effects of DXM.  This is diligence that large companies like Defendant would do when selling a drug.  As a result, Defendant knew that DXM causes drowsiness.  Furthermore, Defendant controls its labeling, knowingly put on the "Non-Drowsy" representations, and knows the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendant's testing would confirm that "Non-Drowsy" is misleading.  For these reasons, Defendant knew that its labeling was false and misleading, or was reckless or willfully blind to this fact.  And as alleged above, Defendant intended that consumers would rely on the "Non-Drowsy" labeling, so that consumers would purchase more products and pay a price premium.

30.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For

8

example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a second example, if a consumer is planning to engage in activities that require them to be alert, or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving, or flying a plane, is dangerous.

31.     Defendant's false statements increased the demand for Non-Drowsy Rite Aid Products and allowed Defendant to charge a price premium.  As explained above, consumers specifically value the "Non-Drowsy" claim because consumers demand cough medicine that will not make them drowsy (e.g., during the day, at work or while driving) and that they can take during the day.  As a result, Defendant was able to charge more for these products than it would have been able to had the labeling been truthful.  Accordingly, as a direct result of Defendant's false statements, Defendant was able to charge a price premium for these products.  As purchasers, Plaintiff and each class member paid this price premium and sustained economic injury.

**D.     Plaintiff was misled by Defendant's misrepresentations.**

32.     In December 2021, Plaintiff bought a bottle of Rite Aid "Non-Drowsy" Daytime Severe Cold & Flu Relief from a Rite Aid store in Santa Ana, California. The package said "Non-Drowsy" prominently on the label, and he read and relied on those statements when purchasing the product.  Accordingly, these representations were part of the basis of the bargain, in that he would not have purchased the Rite Aid "Non-Drowsy" Daytime Severe Cold & Flu Relief on the same terms, or would not have purchased them at all, had he known these representations were not true. However, Plaintiff did not receive the benefit of his bargain because his Non-Drowsy Rite Aid Product was not, in fact, a "Non-Drowsy" medication.  When Plaintiff took

the medication as directed by Defendant, he became unexpectedly drowsy.  He would not have bought this product had he known that the product did, in fact, cause drowsiness, and that drowsiness was a known side-effect of the product.

33.    To be sure, Plaintiff would purchase Non-Drowsy Rite Aid Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised). Plaintiff, however, faces an imminent threat of harm because he will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

**E.    Class Action Allegations.**

34.    Plaintiff brings the asserted claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy Rite Aid Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

35.    For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in certain identified states (the "**Consumer Protection Subclass**").

36.    For certain claims, in the alternative, Plaintiff brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased Non-Drowsy Rite Aid Products in California (the "**California Subclass**").

37.    The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity*

38.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are millions of proposed class members.

### *Commonality*

39.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- Whether the Non-Drowsy Rite Aid Products cause drowsiness;
- Whether Defendant's labelling of the Non-Drowsy Rite Aid Products as "non-drowsy" is deceptive and misleading;
- Whether Defendant violated state consumer protection statutes;
- Damages needed to reasonably compensate Plaintiff and the proposed class.

### *Typicality*

40.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Non-Drowsy Rite Aid Products.  Like the proposed class, Plaintiff would not have purchased the products, or would have paid less for them, had he known that they cause drowsiness.

### *Predominance and Superiority*

41.    The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.

42.    Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  For example, a core

liability question is common: whether Defendant's "Non-Drowsy" representations are false and misleading.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## V. Causes of Action.

### Count I: Violations of State Consumer Protection Acts
**(on behalf of Plaintiff and the Consumer Protection Subclass)**

44. Plaintiff incorporates by reference each and every factual allegation set forth above.

45. This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following. |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |

| Idaho | Idaho Code. Ann. § 48-601, and the following. |
|---|---|
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |

| Oregon | Or. Rev. Stat. § 646.605, and the following. |
|---|---|
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following. |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

46.    Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers. Defendant's conduct, including the false labelling of the Non-Drowsy Rite Aid Products and sale of those misleading products to Plaintiff and Class members, violates each statute's prohibitions.

14

47.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of Class members.  Defendant's misrepresentations were misleading to a reasonable consumer, and Plaintiff and Class members reasonably relied on Defendant's misrepresentations.

48.     Defendant intended that Plaintiff and the proposed Class members would rely on its materially deceptive representations.  Defendant was also aware of the side effects of DXM and thus knew that its representations were false and were likely to mislead consumers.

49.     For applicable statutes, Plaintiff mailed Defendant a written notice and demand for correction on February 16, 2022.  Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

50.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Non-Drowsy Rite Aid Products if they had known that the products cause drowsiness, and/or (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.  In this way, Plaintiff and the proposed Class members have suffered an ascertainable loss, in an amount to be determined at trial.

## Count II: Violation of California's Unfair Competition Law (UCL)
### (on behalf of Plaintiff and the California Subclass)

51.     Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth above as though fully set forth herein.

52.     As alleged in Count I, state consumer protection laws are sufficiently similar such that Plaintiff may bring a claim on behalf of the Consumer Protection Subclass.  In the alternative, Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

53.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

54.     Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged below and incorporated here.

***The Fraudulent Prong***

55.     As alleged in detail above, Defendant's "Non-Drowsy" representations were false and misleading.  Defendant's misrepresentations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.

***The Unfair Prong***

56.     Defendant violated established public policy by violating the CLRA and FAL, as alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

57.     The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the side effects of an over-the-counter medication.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading medication labels only injure healthy competition and harm consumers.

58.     Plaintiff and the Class could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceiving to reasonable consumers like Plaintiff.

*     *     *

59.     For all prongs, Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Rite Aid Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

60.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Rite Aid Products.

61.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

62.    Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Non-Drowsy Rite Aid Products if they had known that the products cause drowsiness, and/or (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

### Count III: Violation of California's False Advertising Law (FAL)
### (on behalf of Plaintiff and the California Subclass)

63.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

64.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

65.    As alleged more fully above, Defendant has falsely advertised Non-Drowsy Rite Aid Products by falsely representing that the products do not cause drowsiness and that drowsiness is not a side-effect of the products.

66.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

67.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Rite Aid Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

68.     In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Rite Aid Products.

69.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

70.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Non-Drowsy Rite Aid Products if they had known that the products cause drowsiness, and/or (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

## Count IV: Violation of California's Consumer Legal Remedies Act (CLRA)
### (on behalf of Plaintiff and the California Subclass)

71.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

72.     Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

73.     Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

74.     Plaintiff, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

75.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

76.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the other members of the California Subclass that

the Non-Drowsy Rite Aid Products do not cause drowsiness, and that drowsiness is not a side effect of the products, when in fact, the products do cause drowsiness.

77.    As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

78.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

79.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Rite Aid Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

80.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Rite Aid Products.

81.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

82.    Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Non-Drowsy Rite Aid Products if they had known that the products cause drowsiness, and/or (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

83.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and all other members of the California Subclass, seeks injunctive relief.

84.    CLRA § 1782 NOTICE.  On February 16, 2022, a CLRA demand letter was sent to Defendant's headquarters and California registered agent, via certified mail (return receipt requested).  This letter provided notice of Defendant's violation of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or

deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and for each member of the California subclass within 30 days of receipt, Plaintiff and the California subclass will seek all monetary relief allowed under the CLRA.

### Count V: Negligent Misrepresentation

### (on behalf of Plaintiff and the Nationwide Class)

85.    Plaintiff incorporates by reference the facts alleged above.

86.    Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

87.    As alleged in detail above, Defendant's labeling represented to Plaintiff and Class members that the Non-Drowsy Rite Aid Products do not cause drowsiness and that drowsiness is not a side effect of these products.

88.    These representations were false. As alleged above, the Non-Drowsy Rite Aid Products do cause drowsiness and drowsiness is a documented side effect.

89.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

90.    Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

91.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Rite Aid Products.

92.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

93.    Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Non-Drowsy Rite Aid Products if they had known that they cause drowsiness, and/or (b)

they overpaid for the products because they are sold at a price premium due to the misrepresentation.

## Count VI: Intentional Misrepresentation

### (on behalf of Plaintiff and the National Class)

94.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

95.    Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

96.    As alleged in detail above, Defendant's labeling represented to Plaintiff and Class members that the Products do not cause drowsiness, and that drowsiness is not a side effect of these products.

97.    These representations were false and misleading.  As alleged above, the Products do cause drowsiness and drowsiness is a documented side effect.

98.    As alleged in detail above, when Defendant made these misrepresentations, it knew that they were false, was reckless to the truth, or was willfully blind.

99.    Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

100.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

101.    Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness, and/or (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

## Count VII: Quasi-Contract / Unjust Enrichment

### (on behalf of Plaintiff and the Nationwide Class)

102.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

103.   Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

104.   As alleged in detail above, Defendant's false and misleading labeling caused Plaintiff and the Class to purchase Non-Drowsy Rite Aid Products and to pay a price premium for these products.

105.   In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

106.   Plaintiff and the Nationwide Class seek restitution.

**VI.   Jury Demand.**

107.   Plaintiff demands a jury trial on all issues so triable.

**VII.   Prayer for Relief.**

108.   Plaintiff seeks the following relief for himself and the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, including statutory, treble, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.

Dated: February 16, 2022                    Respectfully submitted,


                                            By: */s/ Jonas B. Jacobson*


                                            DOVEL & LUNER, LLP
                                            Jonas Jacobson (Cal. Bar No. 269912)
                                            Simon Franzini (Cal. Bar No. 287631)
                                            201 Santa Monica Blvd., Suite 600
                                            Santa Monica, CA 90401
                                            (310) 656-7066
                                            jonas@dovel.com
                                            simon@dovel.com

                                            *Counsel for Plaintiff*